NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| YOLANDA R., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 23-3177 (RK) <br><br> **MEMORANDUM OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court on Yolanda R.'s ("Yolanda")[1] appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final decision, which denied Yolanda's request for disability insurance benefits. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons below, the Court **AFFIRMS** the Commissioner's decision.

**I.    BACKGROUND**

In this appeal, the Court must answer the following question: Does substantial evidence support Administrative Law Judge Peter R. Lee's ("Judge Lee") determination of Yolanda's residual functional capacity?

**A.    PROCEDURAL POSTURE**

Yolanda filed an application for a period of disability and disability insurance benefits on

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

June 17, 2020, alleging an onset date of August 5, 2016. (Administrative Record ("AR") at 16.)[2] Yolanda also filed an application for supplemental security income on June 17, 2020,[3] alleging the same onset date of August 5, 2016.[4] (*Id.* at 16, 263.) The Social Security Administration (the "Administration") denied these requests both initially and on reconsideration. (*Id.* at 13-28, 1-3.) Yolanda requested a hearing before an Administrative Law Judge ("ALJ"), (*Id.* at 68), who thereafter held a telephone hearing on January 31, 2022, (*id.* at 34–61). The ALJ, Judge Lee, issued a written opinion finding that Yolanda was not disabled. (*Id.* at 13-28) The Administration's Appeals Council denied Yolanda's request to review Judge Lee's decision. (*Id.* at 1–3.) This appeal followed. (ECF No. 1.) The Administrative Record was filed on August 14, 2023, (ECF No. 4), Yolanda filed her moving brief on November 13, 2023, (ECF No. 7), the Commissioner filed an opposition brief on December 13, 2023, (ECF No. 9), and Yolanda filed her sur-reply on December 20, 2023, (ECF No. 10).

**B.     JUDGE LEE'S DECISION**

In his February 28, 2022 opinion, Judge Lee held that Yolanda was not disabled under the prevailing Administration regulations. (*See generally* AR at 13-28.) To reach this decision, Judge Lee analyzed Yolanda's application under the five-step process for determining whether an individual is disabled set forth in 20 C.F.R. § 404.1520(a). (*Id.*) At Step One, Judge Lee found that Yolanda had not engaged in substantial gainful activity between the alleged amended onset

---

[2] The Administrative Record ("Record" or "AR") is available at ECF No. 4-1 through 4-8. This opinion will reference only page numbers in the Record without the corresponding ECF numbers.

[3] The Court notes that the ALJ opinion references an application date of July 16, 2021, but the supplemental application was submitted on June 17, 2020. (*Compare* AR at 16 *with* AR at 263.)

[4] Yolanda subsequently amended the alleged onset date to February 10, 2019. (*Id.* at 16.)

date, February 10, 2019, and the date last insured, June 30, 2023. (*Id.* at 18-19 (citing 20 C.F.R. §§ 404.1571 *et seq*, 416.971 *et seq*).) At Step Two, Judge Lee found that Yolanda suffered from several severe impairments, including degenerative disc disease with radiculopathy, osteoarthritis of the knees and right wrist, status post right knee arthroscopy, and obesity. (*Id.* (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).) At Step Three, Judge Lee determined that Yolanda did not have "an impairment or combination of impairments" that qualified under the Administration's listed impairments. (*Id.* at 21-22 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).) As a precursor to Step Four, Judge Lee concluded that Yolanda had the residual functional capacity ("RFC") to perform "light work" but that any job she performed must be limited in specified ways, including "never climb[ing] ropes, ladders or scaffolds[,] never be[ing] exposed to unprotected heights or hazardous machinery[,] occasionally climb[ing] stairs and ramps[,] never crawl[ing][,] occasionally kneel[ing][,] occasionally stoop[ing] and crouch[ing][,] frequently balanc[ing][,] frequently handl[ing][, and] never hav[ing] exposure to extremes in environmental conditions." (*Id.* at 22.) At Step Four, Judge Lee concluded that Yolanda "is capable of performing past relevant work as an Administrative Assistant." (*Id.* at 27 (citing 20 C.F.R. §§ 404.1565, 416.965).) Judge Lee heard testimony that Yolanda previously worked as an Administrative Assistant between 2007 and 2015 years. (*Id.* at 27.) Based on this prior experience, and the testimony from a vocational expert and the medical opinions in the record, Judge Lee concluded that Yolanda "is able to perform the job of an Administrative Assistant as generally and actually performed." (*Id.* at 28.)

In explaining his RFC determination at the precursor to Step Four, Judge Lee reviewed

3

Yolanda's self-reported symptoms and claimed functional limitations. (*Id.* at 23.)[5] The ALJ considered Yolanda's treatment history and determined the extent to which the evidence substantiated Yolanda's claims and functional limitations. (*Id.* at 23-25.)

According to Judge Lee, Yolanda's claims were "not entirely consistent with the medical evidence and other evidence in the record," and Judge Lee explicated how his RFC determination found support in the medical records he reviewed. (*Id.* at 23.) The medical diagnosis evidenced that Yolanda suffered from degenerative disc disease of the lumbar spine, which manifested in lower back pain that radiates to her lower extremity. (*Id.*) Physical examinations throughout the applicable time period showed limited range of motion of trunk flexion, extension, and side bending. (*Id.* at 27.) However, in several treatment notes, her strength "was noted to be 5/5 in the bilateral lower extremities with intact sensation to light touch." (*Id.* at 445-46, 451-52, 455, 458 522.) Although Yolanda's back pain recurred, treatment notes state that her pain symptoms improved from a combination of injections, medication, and home exercises. (*Id.* at 452, 456, 459, 575.) A July 2020 treatment note show Plaintiff was given a cane prescription because "she only had a walker at home[;]" however, there is little other evidence of "use of an assistive device." (*Id.* at 27, 531.) Primary care progress notes and pain management notes documented "little evidence of balance issues or use of an assistive device." (*Id.* at 27.) In 2021, despite continued pain from her degenerative disc disease, Yolanda's treating physicians and pain management specialist documented that her "gait appeared normal" and "muscle tone and strength [were] good." (*Id.* at 576, 580, 636, 812, 819.) Further, Yolanda was "counseled against bedrest" and recommended "to

---

[5] As this appeal concerns Judge Lee's RFC determination, and specifically, whether the ALJ evaluated the state agency medical consultants' opinions, who found Yolanda limited to a range of sedentary work, (*Id.* at 109), the Court summarizes in greater detail this aspect of Judge Lee's decision.

4

maintain or resume normal activity." (*Id.* at 572, 577, 813.)

Regarding Yolanda's arthritic right knee, treatment notes from March 2019 confirm Yolanda's symptoms, documenting her right knee range of motion was from 10 to 130 degrees with medial joint line tenderness, and that she received a cortisone shot for the pain. (*Id.* at 448.) Over a year later, in August 2021, Yolanda's knee pain flared up due to a fall. (*Id.* at 456.) At a visit with doctors thereafter, Yolanda presented with lateral joint line tenderness, decreased quad strength, and radiographs showing "severe right knee arthritis with bone-on-bone sclerosis varus alignment and osteophytes." (*Id.*) However, in a subsequent x-ray in April 2021, imaging showed "no acute fracture, dislocation or acute bony pathology," but a "small suprapatellar joint effusion" in both knees consistent with osteoarthritis. (*Id.* at 587.) Although Yolanda's right knee exam showed tenderness and limited range of motion, there was no atrophy, hypertrophy, or muscle spasms. (*Id.* at 580, 812, 819.) Further, medical tests were negative for meniscus and ACL tears and Yolanda's gait was described as normal with no gross sensory deficits. (*Id.*)

Judge Lee's RFC analysis likewise examined the decisions of Yolanda's treating and consulting physicians in depth. Judge Lee cited the findings of state medical consultants Arthur Pirone, M.D., and Howard Stein, M.D.. (*Id.* at 26-27.) At the initial stage of the disability determination, Dr. Pirone reviewed Yolanda's medical records and described her as capable of sedentary work in that "she can lift and carry ten pounds occasionally and less than ten pounds frequently; stand and walk for two hours; and sit for two hours." (*Id.* at 26, 106-108.) Dr. Pirone further opined that Yolanda could perform "all postural activities occasionally," but could never crawl, "climb ladders, robes or scaffolds," and should avoid unprotected heights. (*Id.*) At the reconsideration stage of the disability determination process, Dr. Stein reviewed Yolanda's medical records and affirmed Dr. Pirone's opinion of Yolanda's capacity to perform sedentary

work, with the added limitation that Yolanda "should avoid concentrated exposure [to] temperature extremes, wetness, and humidity." (*Id.* at 119-121.) As support for his RFC determination, Dr. Stein noted that Yolanda "ambulates with a cane[,] has a right limp," and "can ambulate short distances indoors without [a] cane but requires a cane for longer distances and for balance." (*Id.* at 119.) As will be discussed *infra*, Judge Lee explained why he only partially credited each opinion, which medical evidence undermined the physicians' opinions, and which physical limitations justified his RFC determination. (*Id.* at 27.)

## II.   LEGAL STANDARD

### A.   STANDARD OF REVIEW

The Court reviews the "final decision of the Commissioner of Social Security" to determine whether the Commissioner's findings are "supported by substantial evidence." 42 U.S.C. § 405(g). In the event that the Appeals Council denies a claimant's request for review, "the ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel,* 239 F.3d 589, 592 (3d Cir. 2001) (citation omitted). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Put differently, "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel,* 225 F.3d 310, 316 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). This evidentiary threshold "is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The scope of the Court's review of the ALJ's decision is "quite limited." *Id.* On review the Court may not "re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citing *Richardson v. Perales*, 402 U.S.

6

389, 401 (1971)). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999)). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin,* 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris,* 642 F.2d 700, 706–07 (3d Cir. 1981) (citation omitted).

B. **ESTABLISHING ELIGIBILITY FOR DISABILITY INSURANCE BENEFITS**

To be eligible for disability insurance benefits, a claimant must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled only if their physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

Administration regulations provide a five-step evaluation process to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(4). At Step One, a claimant must establish

7

that they have not engaged in any substantial gainful activity since the onset of their alleged disabilities. *Id.* § 404.1520(a)(4)(i). For Step Two, the claimant must establish that they suffer from a "severe . . . impairment" or "combination of impairments." *Id.* § 404.1520(a)(4)(h). Step Three requires that a claimant provide evidence that their impairments are equal to at least one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant demonstrates that they suffer from a listed impairment or that their severe impairment is equal to a listed impairment, they are presumed to be disabled and entitled to disability insurance benefits. *Id.* If they cannot so demonstrate, the eligibility analysis proceeds to the next step. As a precursor to Step Four, the ALJ must determine whether the claimant's RFC permit them to resume previous employment. *Id.* § 404.1520(a)(4)(iv). If a claimant's RFC permits previous employment, the claimants is not "disabled" and not entitled to disability insurance benefits. *Id.* § 404.1520(f). The burden of persuasion rests with claimants in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009) (non-precedential). At Step Five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work consistent with their medical impairments, age, education, past work experience, and RFC. *Id.* If the Commissioner cannot satisfy this burden, the claimant will receive disability insurance benefits. 20 C.F.R. § 404.1520(g).

### III. DISCUSSION

Yolanda contends that Judge Lee erred in crafting her RFC because it is not supported by substantial evidence. (ECF No. 7 at 15-18.) Essentially, Yolanda argues that the ALJ improperly evaluated the opinions of Dr. Pirone and Dr. Stein, the state agency medical consultants (the "MC Opinions"). (*Id.*) In doing so, Yolanda contends that Judge Lee ignored "the plethora of evidence" that supported the MC Opinions' restriction to sedentary work. (*Id.* at 21.) Further, Judge Lee

"cherry-picked evidence" and employed "circular logic in finding" the MC Opinions' "limitation to sedentary work unpersuasive." (*Id.* at 17.) Thus, Judge Lee's RFC determination narrowly relies "on a handful of select unremarkable findings" and is not supported by substantial evidence. (*Id.* at 18.)

Revised controlling regulations dictate how an ALJ should consider medical opinions. *See* 20 C.F.R. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3).) Previously, the regulations instructed the ALJ to "weigh" medical opinions in evaluating claims. (*Compare* 20 C.F.R. § 416.927 *with* 20 C.F.R. § 416.920c(a).) Under the revised framework, instead of assigning weight to a medical opinion, the ALJ evaluates the persuasiveness of such opinions. (*Id.*) The regulations provide a list of relevant factors the ALJ should consider when determining persuasiveness, noting the most important factors are supportability and consistency. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Generally, the ALJ need only explain how they considered the supportability and consistency of a medical opinion against the record evidence when evaluating the persuasive value of an opinion. (*Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).)

Regarding supportability, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)" the more persuasive the medical opinions will be. (*Id.* §§ 404.1520c(c)(1), 416.920c(c)(1).) Regarding the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s)" is with "other medical sources and non medical sources in the claim," the more persuasive the medical opinion(s) will be. (*Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).)

The MC Opinions opined that Yolanda is "limited to the sedentary exertional level in that she can lift and carry ten pounds occasionally and less than ten pounds frequently; stand and walk

9

for two hours; and sit for two hours." (AR at 107.) The MC Opinions found Yolanda could "perform all postural activities occasionally" with the following non-exertional limitations: "never crawl[ing] and never climb[ing] ladders, ropes or scaffolds[,]" and avoiding "unprotected heights[,]" and "concentrated exposure temperature extremes, wetness, and humidity." (*Id.* at 106-108, 119-20.)

In evaluating these opinions, Judge Lee considered the supportability and consistency of the MC Opinions. As to consistency, Judge Lee found the "nonexertional limitations" generally consistent with the record as the "postural and environmental limitations is supported by physical examinations, imaging studies, [ ] [Yolanda's] conservative treatment modalities during the period at issue," and "clinical findings by the consultative examiner, as well as [Yolanda's] activities of daily living." (*Id.* at 27.) Regarding the exertional restriction to sedentary work, Judge Lee found such a limitation "inconsistent with physical examinations showing near normal lower extremity strength and intact sensation." (*Id.* (citing AR at 576, 580, 636, 747-48, 812, 819).) Additionally, Judge Lee found this exertional limitation not "fully supported by primary care progress notes and pain management treatment notes, which documented little evidence of balance issues or use of an assistive device." (*Id.*) Further, these treatment notes contained instructions that Yolanda "maintain or resume normal activity," "counsel[ing] against bedrest." (*Id.* 572, 577, 813.) In Judge Lee's determination, Yolanda's generally normal lower extremity strength and normal gait counseled against a sedentary restriction. (*Id.* at 27.) Accordingly, Judge Lee found the MC Opinions persuasive as to the non-exertional limitations but unpersuasive as to the exertional restriction to sedentary work given the lack of consistency and supportability. (*Id.*)

In response, Yolanda points to several sources in the record to show that the weight of the

evidence supports a limitation to sedentary work. Yolanda cites to treatment notes from 2019-2021 that found limited lumbar active range of motion, arthritis of the right knee with decreased mobility, lumbar radiculopathy, moderate antalgic gait, and lower back diffuse tenderness with radiation into the right sciatic and sacroiliac region. (ECF No. 7 at 19-21 (citing AR at 446, 448, 451, 559, 724, and 738).)[6] However, Judge Lee acknowledged this evidence in his opinion and noted that many treatment notes also state that Yolanda's "gait appeared normal," her "muscle tone and strength [were] good," and her strength "was noted to be 5/5 in the bilateral lower extremities with intact sensation to light touch." (ECF No. 9 at 7 (citing AR at 445-46, 459-60, 522.)

The existence of such conflicting evidence does not necessarily undermine Judge Lee's determination. *See Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009) ("[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decisions so long as the record provides substantial support for that decision."); *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (stating the court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied."); *Carolyn S. v. Comm'r of Soc. Sec.*, No. CV 21-10858, 2022 WL 4550628, at *8 (D.N.J. Sept. 28, 2022)(same). The critical question is

---

[6] In contrast, Yolanda points to the following cites in the record to show that substantial evidence supports a restriction to sedentary work: her medical consultative examiner, Dr. Ronald Bagner's treatment notes from May 2021 stated that Yolanda walked with a right-sided limp, ambulated with a cane, and wore a right knee brace. (ECF No. 7 at 19 (citing AR at 558).) Dr. Bagner also noted Yolanda experienced pain when moving her lower back, reduced right knee range of motion with minimal swelling, diffuse tenderness, and crepitus on movement. (*Id.* (citing AR at 559).) Dr. Bagner diagnosed Yolanda with degenerative arthritis and opined that she would not need a cane to ambulate short distances indoors, but would require one for longer distance ambulation such as outdoors for balance. (*Id.*) Yolanda cites to her treating physician and pain management specialist, Dr. Shalgan Iqbal's treatment notes from December 2021, which document positive straight leg raising on the right side, tenderness on palpation of the medial and lateral joint lines, and decreased right knee active motion. (*Id.* (citing AR at 738-9).)

whether substantial evidence supports Judge Lee's RFC determination.

Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak*, 777 F.3d at 610. (citations omitted). Inherent to the deferential substantial evidence "standard of review is the rule that even if there is contrary evidence in the record that would justify the opposite conclusion, the ALJ's decision will be upheld if it is also supported by the evidence." *Parsons v. Barnhart*, 101 F. App'x 868, 869 (3d Cir. 2004). Judge Lee relied on more than a "mere scintilla" of record evidence to support his evaluation of the MC Opinions. *Zirnsak*, 777 F.3d at 610. (citations omitted). Judge Lee surveyed the entire record and cited to several treatment notes that supported why he found the sedentary restriction in the MC Opinions unpersuasive. (AR at 27.) In doing so, Judge Lee complied with the regulations on how to evaluate consultative opinions and surpassed the deferential substantial evidence standard. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *see also* Zirnsak, 777 F.3d at 610 ("Plaintiff fails to recognize that where, as here, there is sufficient in the record which would support two contrary conclusions, the ALJ's decision on the matter is entitled to deference.").

Further, Judge Lee discussed the evidence Yolanda points to and explained how such evidence is inconsistent with treatment notes showing normal balance and strength in her lower extremities. (AR at 27.) In this way, Judge Lee did not, as Yolanda claims, "fail to discuss negative findings, while relying upon positive findings" in a classic "cherry pick[ing]" of the evidence. (ECF No. 7 at 18 (quoting *Blackman v. Kijakazi*, No. 20-4392, 2022 WL 2791746, at *15 (E.D. Pa. July 15, 2022)). Even if the Court disagreed with the ALJ's parsing of the record, the RFC determination is valid if supported by substantial evidence. *See Fargnoli v Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry

12

differently.") Nor does Yolanda argue that Judge Lee failed to explain why he discounted the MC Opinions sedentary limitation. S*ee Plummer v. Apfel,* 186 F. 3d 422, 429 (3d Cir. 1999). ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and [the] reason(s) for discounting such evidence.")[7]

Lastly, the Court affirms the ALJ's decision because any error alleged by Yolanda is harmless. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *see also Rutherford v. Barnhart,* 399 F.3d 546, 556 (3d Cir. 2005) (holding that, as to legal errors, plaintiff has the burden of proving that absent the alleged error, the outcome of the ALJ's decision would have changed.) Yolanda contends that Judge Lee's error in evaluating the MC Opinions was harmful because had Yolanda received an RFC with a sedentary limitation, she would be disabled. (ECF No. 7 at 22.) However, during the ALJ hearing, the vocational expert stated that someone limited to sedentary work but who had Yolanda's non-exertional limitations "would be able to perform the administrative assistant job as it is generally performed." (AR at 60.) As stated in the ALJ Opinion, Yolanda had the past relevant work experience as an administrative assistant. (*Id.* at 27.) Thus, even if the ALJ found Yolanda limited to sedentary work, she would

---

[7] In the context of Yolanda's substantial evidence argument, she also claims the ALJ employed circular logic in determining her RFC. (ECF No. 7 at 22; ECF No. 10 at 2.) She argues that the concluding sentence of the ALJ opinion stating the MC Opinions are "persuasive to the extent it is consistent with the residual functional capacity" is improper circular logic. (*Id.*) However, throughout the rest of the ALJ opinion, Judge Lee reasons that the existence of contrary record evidence explains why he finds the non-exertional limitations of the MC Opinions persuasive and the exertional limitations not persuasive. (AR at 27.) As such, Judge Lee did not engage in "circular reasoning to determine the extent to which the agency opinions were persuasive," as Yolanda claims. (ECF No. 7 at 22.)

still be able to perform her past work experience as generally performed and be found not disabled at Step 4. (*Id.* at 27-28, 60.)[8]

---

[8] Yolanda briefly argues that Judge Lee's discounting of the sedentary limitation in the MC Opinions creates a gap in the evidentiary record as the RFC determination is now unsupported by expert opinion evidence. (ECF No. 7 at 22-23; ECF No. 10 at 2.) First, the ALJ is not beholden to accepting the opinions of medical consultants. *see also Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations.")(citations omitted.). The ALJ is entirely within its right to evaluate the persuasiveness of a medical consultant's opinion. *See* 20 C.F.R. § 404.1546(c), 404.1520c(c), 416.920c(c) (charging the ALJ with determining the RFC and evaluating the persuasiveness of consultative opinions.) Regarding the "evidentiary gap" created by Judge Lee discounting a portion of the MC Opinions, the Plaintiff misapplies this concept. *See Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir. 1999) (explaining that evidentiary gap exists where the entire evidentiary record consisted of sparse notes reflecting nine visits when claimant's testimony suggesting monthly treatment over many years.) The evidentiary record in the instant case includes extensive medical treatment records and objective medical evidence such that any claims of evidentiary gaps are not persuasive. (*Id.*)

## CONCLUSION

Having reviewed the record as a whole, the Court affirms the affirmance of Judge Lee's decision by the Administration's Appeals Council. The Court issues an order consistent with this Memorandum Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: September 3rd, 2024